IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| UNITED STATES for the use and benefit of KINGSTON ENVIRONMENTAL SERVICES, INC., a Missouri corporation,<br><br>Plaintiff,<br><br>vs.<br><br>DAVID BOLAND, INC., WESTERN SURETY COMPANY, GRANITE PRECASTING & CONCRETE, INC., and HAWAII GEOPHYSICAL SERVICES, LLC,<br><br>Defendants,<br><br>and<br><br>UNITED STATES for the use and Benefit of DAVID BOLAND, INC.<br><br>Counterclaim Plaintiff,<br><br>vs.<br><br>KINGSTON ENVIRONMENTAL SERVICES, INC. and BERKELY REGIONAL INSURANCE COMPANY,<br><br>Counterclaim Defendants. | CIVIL NO. 16-00205 DKW-WRP<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO LIFT STAY** |

## INTRODUCTION

Plaintiff Kingston Environmental Services, Inc. ("Kingston") moves to lift the stay of its action against Defendants Western Surety Company and David Boland, Inc. ("Boland" and together with Western Surety, the "Defendants"). Kingston is Boland's subcontractor on a military construction project on Oahu. Pursuant to this Court's August 2017 Order granting Defendants' Motion to Stay, over the course of the past two years, Kingston has pursued contractually-mandated administrative remedies for its breach of contract claims, obtaining contracting officer final decisions (COFDs) regarding the extent of the government's liability for those claims. Finding that Kingston has satisfied its contractual obligation to exhaust administrative remedies prior to proceeding with its civil action against Boland, the Court GRANTS Plaintiff's Amended Motion to Lift Stay (Dkt. No. 169).

## BACKGROUND

### I. The Project and Subcontract

Boland is the prime contractor (Contract No. W9128A-12-C-0009 or "Prime Contract") on an infrastructure construction project for the United States Army Corps of Engineers ("USACE") at Wheeler Army Airfield, Oahu, Hawaii (the "Project"). Defendant Western Surety issued performance and payment bonds on

behalf of Boland for the Project. Complaint, Dkt. No. 1, ¶¶ 10–11. Boland subcontracted with Kingston to provide labor, materials, equipment, and services ("Subcontract").[1]

Kingston contends that Boland mismanaged the Project, which had an original completion date of approximately May 2015. Boland acknowledges that the Project was behind schedule, and that its management of the Project may have been "below average" due to its "strained relationship" with the government but asserts that the majority of the issues forming the basis for Kingston's claims against Boland are issues for which the USACE is or may be responsible. Kingston Ex. A, 7/19/17 Hildebrandt Dep. at 83–85; Dkt. No. 134-1.

Kingston filed this action on April 29, 2016 seeking payment from Western Surety of its bonds under the Miller Act, 40 U.S.C. § 3133 *et seq.*, (Count I) and alleging that Boland breached the Subcontract (Count II). Complaint ¶¶ 38–50.

## II. The Stay

At the time it initiated this action, Kingston had not submitted requests to Boland to sponsor or submit to the government all claims for which the USACE might be responsible for Kingston's losses. *See* Order Granting in Part

---

[1] Kingston's 2012 Subcontract is attached as Exhibit A to the Declaration of Craig Hildebrandt, Dkt. No. 116-1, and as Exhibit B to Boland's Concise Statement of Facts, Dkt. No. 116-2.

Defendants' Motion for Partial Summary Judgment and Staying Case (2017 Order), Dkt. No. 145, August 30, 2017. The parties disputed whether Kingston could pursue the claims asserted here prior to exhausting the remedial procedure specified in the Subcontract, as Kingston had done previously with other claims. *Id.*

On June 16, 2017, Defendants filed a Motion for Summary Judgment, which argued that Kingston failed to comply with the contractually-mandated remedial procedure in Subcontract Paragraph 13A, which is a condition precedent to the present civil action. *See* Dkt. No. 115. Defendants moved to stay this action and enforce the administrative remedies outlined in Subcontract Paragraph 13A, which provides that any claims by Kingston against Boland for which the USACE "may be responsible" must be pursued first by Boland on behalf of Kingston through the remedial procedures set forth in the Prime Contract between Boland and the USACE. Paragraph 23 of the Subcontract, entitled "Waivers and Stays," provides that Kingston agrees to stay any action pending the completion of the Prime Contract's remedial procedure as required by Paragraph 13. Finding that Kingston was contractually obligated to exhaust claims for which the USACE might bear responsibility, this Court stayed proceedings.

Since August 2017, Kingston has pursued its claims administratively, submitting the following seven claims to the contracting officer:

1. CP-141.7 Cost Overrun Claim
2. CP-141.1 UXO Claim
3. CP-141.2 FPVC Claim
4. CP-141.3 Box Culvert Utility Relocation Claim
5. CP-141.4 Utility Pole Pads Claim
6. CP-141.5 Box Culvert Select Backfill Claim
7. CP-141.6 Airdrome Construction Entrance Claim

Amended Motion to Lift Stay (Motion), Dkt. No. 169, at 3. In February 2019, the contracting officer found that the USACE was responsible for Claim #2, the "UXO" claim (CP141.1), in the amount of $1,900.[2] *Id.*, 4. The six remaining claims were rejected, including Claim #1, the $6,882,738 "Cost Overrun" claim that makes up the bulk of Kingston's claims against Boland. *Id.* Kingston agreed with three of the COFDs rejecting USACE liability, Claim #1, Claim #3, and Claim #7, and elected to only appeal the other three COFDs, Claim #4, Claim #5, and Claim #6, to the Armed Services Board of Contract Appeals (ASBCA). *Id.* The ASBCA has not yet reached a decision on the three appealed COFDs. *See*

---

[2]Plaintiffs state that the COFDs are attached as Exhibit A (Motion at 4) but no such attachment was filed. As a result, the Court is unable to determine on what day the COFDs were issued or the precise content of the COFDs.

Defendants' Opposition to Plaintiff's Amended Motion to Stay (Opp.), Dkt. No. 176.

On April 24, 2019, Plaintiff filed an Amended Motion to Lift Stay (Motion).³ Dkt. No. 169. On May 16, 2019, Defendants filed an Opposition (Dkt. No. 176), and Plaintiff timely replied (Dkt. No. 177). Pursuant to Local Rule 7.2(d), the Court finds this matter suitable for disposition without a hearing.

## **LEGAL FRAMEWORK**

"[T]he power to stay proceedings is incidental to the power inherent in every court to control disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). "The exertion of this power calls for the exercise of sound discretion." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962); *see Clinton v. Jones*, 520 U.S. 681, 706 (1997) ("The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket."); *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1109 (9th Cir. 2005) ("A district court has discretionary power to stay proceedings in its own court[.]"). When a stay is requested because of pending proceedings that bear on the case, the court may

---

³Kingston erroneously filed an unsigned version of this Motion on April 24, 2019. (Dkt. No. 168). That motion is superseded by this one and the previous motion is DENIED as moot.

grant a stay in the interests of the efficiency of its own docket and fairness to the parties. *See Leyva v. Certified Grocers of Cal. Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979); *see also Mediterranean Enters., Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1465 (9th Cir. 1983) ("A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case.").

The Ninth Circuit set out the following framework for analyzing motions to stay pending resolution of related matters:

> Where it is proposed that a pending proceeding be stayed, the competing interests which will be affected by the granting or refusal to grant a stay must be weighed. Among those competing interests are the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay.

*Lockyer*, 398 F.3d at 1110 (9th Cir. 2005) (quoting *CMAX*, 300 F.2d at 268).

## **DISCUSSION**

Kingston moves to lift the August 2017 stay imposed by this Court and to allow it to pursue its claims against Boland. Kingston argues that, by obtaining COFDs, it has satisfied its contractual obligation to pursue administrative remedies determining the extent of the government's liability, if any, for the claims Kingston

7

seeks to assert against Boland. Defendants argue that (1) Kingston must appeal all COFDs to the ASBCA to fully exhaust administrative remedies under the contract before it can pursue claims against Boland in this Court, and (2) that the Court should decline to lift the stay until all of the appeals to the ASBCA have been resolved. For the reasons set forth below, the Court concludes that litigation of Kingston's claims in this Court should resume because Kingston has exhausted the contractual remedial procedure required under the Subcontract and further delay is unwarranted. Kingston's Motion is therefore GRANTED.

In granting Defendants' 2017 Motion to Stay, the Court ruled that Subcontract paragraphs 13A and 23 applied to Kingston's action in this Court, and that Kingston was therefore required to pursue administrative remedies and stay the instant action pending exhaustion of those remedies. *See* August 2017 Order. The question now before the Court is whether the COFDs Kingston obtained pursuant to the Court's order satisfy Kingston's exhaustion obligation. In other words, the parties dispute the meaning of paragraph 13A's administrative remedies requirement.

Paragraph 13A, in relevant part, provides:

> The contractual remedial procedure described in section 0700-Contract Clauses, 52.233-1 Disputes, (JUL2002) of the Prime Contract [between Boland and USACE] relating to claims for which the Owner may be responsible is specifically incorporated

8

> herein by reference and made a part of this Subcontract Agreement. The Subcontractor shall first pursue and fully exhaust said procedure before commencing any other action against the Contractor or its surety for any claims it may have arising out of its performance of the Work herein[…]. Final determination of the Subcontractor's claim(s) by the appropriate board or court shall be final and binding on the Subcontractor and the Contractor shall have no further liability, responsibility, or obligation to the Subcontractor except as may be otherwise provided in this Subcontract Agreement.

The operative clause, identified by both parties, is the reference to the Prime Contract's remedial mechanism: "The contractual remedial procedure described in section 0700-Contract Clauses, 52.233-1 Disputes, (JUL2002) of the Prime Contract." Although neither party provided the Court with the Prime Contract itself, both agree that the remedial provision of the Prime Contract incorporates by reference Federal Acquisition Regulation (FAR) §52-233-1, entitled "Disputes." Motion at 5; Opposition at 4 (cited as 48 C.F.R §52.233-1). FAR §52-233-1 does not use the word "exhaust" or otherwise describe when a claim is exhausted.

Kingston argues that the FAR provision clearly states that a COFD is final in the absence of an appeal and that the decision to appeal a COFD is at the discretion of the contractor. *See* Motion at 5. Defendants respond, without citation to any authority, that "[t]he issuance of a [COFD] is merely the first step in the administrative contractual remedial procedure…under the terms of paragraph 13A…." Opp. at 5. Specifically, Defendants argue that Kingston has

"summarily ignored the clear language and mandate of the Subcontract Agreement and the Court's holding regarding what must be exhausted contained in the Stay Order" by "abandoning certain claims after having obtained a COFD." Motion at 7-8. In short, Defendants argue that Kingston is required to appeal all COFDs that rejected government liability before it can claim to have exhausted administrative remedies and before it may pursue those claims against Boland here.

Defendants' argument fails for several reasons. The relevant section of FAR §52-233-1, subparagraph f, states that "[t]he Contracting Officer's decision shall be final unless the Contractor appeals or files a suit as provided in the Act." Motion at 5. The provision is unambiguous that a COFD is final without an appeal. Moreover, nowhere in the cited FAR section or in the cited language from the Prime and Subcontract does it state that COFDs *must* be appealed.[4]

In ordering Kingston to pursue administrative remedies that would determine the government's liability, the Court agreed with Defendants, over Kingston's objections, that the extent of the government's liability should not be

---

[4]Both parties reference and make much of the language of 41 U.S.C. §7104(a), which states "A contractor, within 90 days from the date of receipt of a contracting officer's decision under section 7103 of this title, may appeal the decision to an agency board as provided in section 7105 of this title." Motion at 5; Opp at 8. Although this statutory provision addresses the avenues of appeal of COFDs, it does little to answer the question of when administrative remedies have been exhausted.

decided by this Court. Indeed, the Court made no findings as to whether or not the government was liable, even in part, for any of the claims Kingston sought to pursue against Boland. The Court, in fact, recognized that Kingston's theory of liability asserted the contrary:

> "Kingston argues that it seeks compensation for delays and cost-overruns based exclusively on Boland's poor Project management…The Court expresses no opinion as to who is ultimately at fault for the delays and cost-overruns experienced on the Project—that is a question that is not properly before this Court in the first instance."

Order at 15. Pursuant to the Court's Order, Kingston obtained COFDs, which found the government not liable for six of the seven claims Kingston presented. Thus, the COFDs have now provided an answer to the question of government liability in the first instance such that this Court can proceed with the question properly before it: the extent of Boland's liability for Kingston's claims.

The scant case law cited by either party does nothing to disturb this conclusion. Rather, the three cases cited by both parties show only that the Court of Federal Claims has interpreted its own jurisdictional trigger to require exhaustion in the form of COFDs. *Olsberg Excavating Co. v. United States,* 3 Cl. Ct. 249 (1983) (finding that filing an untimely appeal of a COFD to the relevant administrative appeals board did not preclude jurisdiction over a direct action in the Court of Federal Claims where the appeals provision allows for an appeal of a

11

COFD in either forum); *Rider v. United States,* 7 Cl. Ct. 770, 776 (1985), *aff'd*, 790 F.2d 91 (Fed. Cir. 1986) (finding that, if the Contract Disputes Act were applicable, the Court of Federal Claims does not have jurisdiction until a COFD has issued.) For example, in *SITCO Gen. Trading & Contracting Co. v. United States*, the court held that "a plaintiff must exhaust administrative remedies available under the CDA [Contract Disputes Act] by submitting a claim to and seeking a final decision from the contracting officer before filing suit." 87 Fed. Cl. 506, 508 (2009). The relevant provision of the CDA at issue in *SITCO* states, "[a]ll claims by a contractor against the government relating to a contract shall be in writing and shall be submitted to the contracting officer for a decision." *Id.* (citing CDA, Section 605(a)). The Court of Federal Claims in *SITCO* interpreted that provision to require the plaintiff to show that the contracting officer had rendered a final decision of its claim before invoking the court's jurisdiction. *Id.* (citing *Sarang Corp. v. United States,* 76 Fed. Cl. 560, 564 (2007) (footnotes omitted)(emphasis added)). Although *SITCO* was concerned with administrative exhaustion as a jurisdictional prerequisite for the Court of Federal Claims, the interpretation of the meaning of administrative exhaustion is instructive. This Court similarly concludes that the Subcontract's administrative exhaustion

language only requires obtaining a COFD, not filing an appeal or obtaining an appellate ruling on the COFD.

Defendants additionally argue that the Court should stay proceedings for discretionary reasons, asserting that allowing Kingston to pursue claims in this Court while its appeals are pending before the ASBCA will result in "piecemeal" outcomes. That is because, at least in part, Defendants perceive an overlap between those claims on appeal to the ASBCA and those claims which Kingston wishes to pursue here. Opp. at 10; Attachment A, Hildebrandt Dec. at 4. However, Kingston has already consented to excluding the claims it has appealed to the ASBCA from the action before this Court. Motion at 7. Even if that were not the case, Defendants' concern is easily remedied: to the extent that favorable resolution of the three ASBCA claims mitigates, offsets, or eliminates Boland's liability for the three claims pursued here, those pieces can be excised from Kingston's action or prayer for relief. Or, as Kingston suggests, the parsing of its claims here can occur even without an ASBCA decision and before trial.[5] Reply at 10-11.

---

[5]Of relevance, the total amount of the claims Kingston is appealing to the ASBCA appears to be in the tens of thousands of dollars. When compared to the claims Kingston seeks to pursue here, including one exceeding six million dollars, resolution of the relatively minor administrative claims should not hold hostage pursuit of Kingston's most substantial claim.

13

In deciding whether to grant or lift a stay, the Court must consider the "hardship or inequity which a party may suffer" and ensure "the orderly course of justice." *Lockyer,* 398 F.3d at 1109. The Court finds that further staying proceedings would prejudice Kingston given the time and cost it has already incurred in pursuing administrative remedies (and given that there is no contractual reason to further delay). Just as importantly, delaying the resolution of Kingston's largest claim against Boland, pending the appeal of some minor claims against the government, runs counter to the fair and efficient administration of justice.

## CONCLUSION

For the foregoing reasons, Plaintiff's Amended Motion to Lift Stay (Dkt. No. 169) is GRANTED. Plaintiff's previously filed Motion to Lift Stay (Dkt. No. 168) is DENIED as moot. IT IS SO ORDERED.

DATED: June 28, 2019 at Honolulu, Hawai'i.



Derrick K. Watson
United States District Judge

---

*Kingston Environmental Services, Inc., et al. v. Boland, Inc. et al.*, CV NO. 16-00205 DKW-WRP; **ORDER GRANTING PLAINTIFF'S AMENDED MOTION TO LIFT STAY**